UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE WHITE, | ) |
| Plaintiff(s), | ) No. C09-0989 BZ |
| v. | ) **ORDER AWARDING ATTORNEYS'** |
| MING R. SHEN, et al., | ) **FEES AND COSTS** |
| Defendant(s). | ) |

Before the Court is plaintiff's motion for attorneys' fees and costs. Having considered the arguments of counsel and the papers submitted, the motion is **DENIED IN PART** and **GRANTED IN PART** as set forth below.[1]

In this disability access suit, plaintiff Steve White, a paraplegic, sued defendants Ming R. Shen and Xiao F. Zhou, the owners of Suzhou Restaurant in Richmond, California. Plaintiff alleged he visited the Suzhou Restaurant to attend a business meeting on or about December 5, 2008. After this

---

[1] All parties have consented to my jurisdiction for all proceedings including entry of final judgment, pursuant to 28 U.S.C. § 636(c).

1

visit, plaintiff complained to defendants' employees about the failures to provide properly accessible facilities for disabled persons. Defendants failed to remove the disability access barriers that plaintiff complained about. Plaintiff then filed this suit on March 6, 2009, alleging violations of the Americans with Disabilities Act (ADA) codified under 42 U.S.C. §§ 12101 et seq., California Health & Safety Code §§ 19955 et seq., and California Civil Code § 54.[2]

Since the ADA was passed, over two thousand ADA access cases have been filed in this district. Plaintiff's counsel has filed about 300 of them. A recurring type of case involves a disabled person denied full access to a neighborhood restaurant or store because the establishment lacks an accessible bathroom or has steps. Frequently, the establishment is in an older building and is marginally successful. An obstacle to achieving compliance with the ADA's access requirements can be the amount of fees incurred by plaintiff's counsel by the time of a settlement. Frequently, defendants complain that the attorneys' fees are greater than the cost of remediation and plaintiff's damages combined. In an effort to expedite the achievement of compliance with the ADA, the Court adopted General Order (GO) 56 in 2005. See Connally v. Bayport Marina Plaza LLC, 2007 WL 2900511, at *1 (N.D. Cal. 2007). Its aim is to require the parties to engage in a structured process designed to achieve early compliance with the ADA while minimizing the adversarial

---

[2] These California statutes offer similar protections as the ADA.

2

litigation process and concomitant fees. This motion is instructive of what can go right and what can go wrong in an ADA access case.

Under GO 56, in an optimal situation, an agreement to resolve the access compliance issues, if not the entire suit, would be reached approximately 4 months after the lawsuit was filed, at or after a joint site inspection. If not, GO 56 provides for mediation approximately 7 months after the lawsuit was filed. Here, the early site inspection was delayed, the parties needed mediation and the access issues were not resolved until approximately 11 months after the lawsuit was filed. Before the mediation, plaintiff had already incurred $35,571.50 in attorneys' fees. Plaintiff incurred an additional $19,078.50 in attorneys' fees after this date. Plaintiff's damage case eventually settled for $4000.00. Unable to agree on plaintiff's attorneys' fees, this motion was filed.

Plaintiff's motion for attorneys' fees and costs is brought under federal and state law. Section 505 of the ADA authorizes the Court to award a prevailing party reasonable attorneys' fees and costs. 42 U.S.C. § 12205. California Code of Civil Procedure § 1021.5 authorizes an award of attorneys' fees for enforcing "an important right affecting the public interest" if a "significant benefit . . . has been conferred on the general public or a large class of persons." Providing disabled persons access constitutes an important right affecting the public interest. California Government Code § 19230.

3

The purpose of these attorneys' fees statutes is to assure disabled persons that they will be able to secure counsel to represent them and help vindicate their civil rights. See 42 U.S.C. § 12205; Corder v. Gates, 947 F.3d 374, 377 (9 Circ. 1991). In the San Francisco Bay Area, there is little danger that a disabled plaintiff will not be able to find an attorney to handle an access suit. There are a number of attorneys that specialize in bringing such actions, including plaintiff's counsel, the Law Offices of Paul Rein. See e.g., Dytch v. Jin, 3:08-cv-05028 EDL (N.D. Cal. 2009). A check of this district's docket discloses that plaintiff's counsel, has filed 287 access suits in the past nineteen years and has previously represented plaintiff six times. White v. Tom Eplin's Auto. Ctr., 3:06-cv-05871 JSW (N.D. Cal. 2007); White v. Cala, 3:06-cv-03615 MJJ (N.D. Cal. 2007); White v. Emil Villa's Cal. BBQ, 3:05-cv-02753-MMC (N.D. Cal. 2006); White v. Bank of Am. N.A., 3:05-cv-02985 MEJ (N.D. Cal. 2006); White v. Crockett, 4:04-cv-05094 SBA (N.D. Cal. 2005); White v. Main Street CA, Inc., 3:02-cv-1062 JCS (N.D. Cal. 2002). Each of these cases settled. This is common in access cases in this district, with virtually all cases resolving with agreements to remediate the access barriers, to pay damages to the plaintiff, and to pay the plaintiff's attorneys' fees.

To determine the reasonable amount of attorneys' fees under the ADA and state law, the court should "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119

4

1  (9th Cir. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424,
2  433 (1983)); Crommie v. State of California, 840 F.Supp. 719,
3  724-25 (N.D. Cal. 1994) (establishing the lodestar method as
4  the proper method of calculation of attorneys' fees under
5  state law).  The court must review time records to determine
6  whether the hours expended on a matter were reasonable or
7  excessive, and must determine the reasonable hourly rate by
8  looking to "the rate prevailing in the community for similar
9  work performed by attorneys of comparable skill, experience,
10 and reputation."  Chalmers v. City of L.A., 796 F.2d 1205,
11 1210-11 (9th Cir. 1986), reh'g denied, amended on other
12 grounds, 808 F.2d 1373 (9th Cir. 1987).

13      Plaintiff requests an award of $49,185 in attorneys' fees
14 and $8,637 in costs.[3]  Mot. at 16.  Defendants filed a brief
15 opposition, arguing that this matter was resolved shortly
16 after plaintiff filed the suit, without any further litigation
17 such as discovery, extensive motion practice, or trial.  Opp.
18 at 2.  Defendants objected to plaintiff's claim for attorneys'
19 fees as excessive.  Opp. at 3.  The Court agrees.  However,
20 their proposal was that plaintiff be awarded no fees (Opp. at
21 7), with which the Court disagrees.  Since the defendants do
22 not dispute that the plaintiff is the prevailing party, the
23 Court finds that plaintiff is entitled to attorneys' fees in
24 this action.
25 ///
26

27     [3]   While counsel actually billed $54,650 in attorneys'
   fees, he voluntarily reduced his claim for fees by ten percent.
28 Mot. at 16.

5

**I.   Fees**

**A. Reasonable Hours Expended**

The Court begins by determining whether the number of hours expended litigating this matter was reasonable in light of the work performed and the context of the case. See McGrath v. County of Nev., 67 F.3d 248, 254 n.5 (9th Cir. 1995). If the Court finds that the number of hours was unreasonable, it may exclude any hours that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). In light of the purpose previously discussed of granting attorneys' fees in access cases, the Court finds that the 130 hours expended litigating this matter was unreasonable based on the routine work performed in this case.

**i.   Paul Rein**

Rein served as lead counsel and requests an award for approximately 60 hours of his time spent litigating the case. Rein Decl., Ex. 26. Defendants argue that it was excessive for three lawyers to represent plaintiff in what is essentially a routine ADA access case against a small business, and the Court agrees. Opp. at 6. A routine ADA access case does not involve complicated or novel legal issues. Apart from changing the names, times and location, plaintiff's complaint is verbally identical to complaints Rein has filed in other ADA lawsuits, including several that Rein has filed on behalf of plaintiff. Compare Docket No. 1 with Tom Eplin's Auto. Ctr., 3:06-cv-05871 JSW, Docket No. 1; see also Bank of Am. N.A., 3:05-cv-02985 MEJ, Docket No. 1. Yet

1  Rein spent 1 hour meeting with his staff and co-counsel
2  regarding this complaint and an additional 3 hours drafting
3  this complaint. Rein Decl., Ex. 26. This is unreasonable.
4  There is no explanation why the changes to the form complaint
5  could not have been made in much less time by a paralegal.
6      Defendants' sole defense in this matter was undue
7  hardship; liability was not in question during the litigation.
8  Opp. at 6. Accordingly, it was unnecessary for Rein to staff
9  the case with two additional attorneys in this case. Having
10 reviewed Rein's time sheets (Rein Decl., Ex. 26), the Court
11 finds over 20 entries of internal meetings and discussions
12 with co-counsel Celia McGuinness. Id. Given the
13 straightforward nature of this case, I find it unreasonable
14 for Rein to consult with co-counsel over 20 times. Rein also
15 spent time reviewing documents that McGuinness already
16 reviewed, such as the defendants' initial disclosures,
17 defendants' opposition to plaintiff's motion to enforce GO 56,
18 and the report by access consultant Karl Danz. Id. This is
19 excessive.
20     The Court does not see any reason necessitating both Rein
21 and McGuinness to meet and discuss the case or review the same
22 documents when this routine ADA access case should have only
23 required one attorney to represent plaintiff. McGuinness is
24 requesting compensation for approximately 50 hours of her own
25 time on this case, which I find is more than sufficient to
26 obtain the results achieved. Therefore, the Court will only
27 award Rein fees for the 13.7 hours he spent before McGuinness
28 began working on the case on February 25, 2009.

1           **ii. Catherine Cabalo**

2     In reviewing the time sheets submitted by Catherine
3 Cabalo, the Court finds that a majority of Cabalo's time was
4 spent traveling to and attending the parties' mediation that
5 McGuinness also attended. Cabalo Decl., Ex. 35. The Court
6 finds that Cabalo's tasks could have been delegated to a
7 single attorney. Therefore, the Court will not award fees
8 based on the time submitted by Catherine Cabalo, which the
9 Court finds was unnecessary.

10           **iii. Celia McGuinness**

11     The Court will award fees to McGuinness for the 50.8
12 hours she expended in this matter. This means that plaintiffs
13 will be compensated for approximately 74 hours of attorney and
14 legal assistant time. Is that reasonable? While the total
15 number of hours are more than the Court would expect in a
16 routine ADA access case, there are several extenuating factors
17 here. Defendants shifted counsel at one point and the
18 proceedings were delayed by the death of one defendant. While
19 defendants are not at fault for these delays, it would also be
20 unfair to penalize plaintiff's counsel for accommodating
21 defendants. There were also some attorneys' fees expended by
22 plaintiff's counsel in dealing with what they characterize as
23 non-cooperation from defendants' second attorney, George
24 Holland. The Court agrees that some of plaintiff's attorneys'
25 fees were incurred as a result of a lack of cooperation by Mr.
26 Holland in accomplishing the goals of GO 56. In a routine
27 case, assuming that defense counsel cooperates, the Court
28 would expect to see fewer hours expended by plaintiff's

1 | counsel.

2 | **B. Hourly Rate**

Plaintiff requests the following hourly rates for counsel: $495 for Paul Rein; $395 for Celia McGuinness; and $330 for Catherine Cabalo. Plaintiff also requests $165 an hour for senior paralegal Aaron Clefton. In support of his motion for attorneys' fees, plaintiff submits substantial evidence that the attorneys' billing rates are reasonable given their education, skill, and experience and the market rate for attorneys of comparable skill and experience. See Rein Decl. at ¶ 9-12; McGuinness Decl. at ¶ 10-13; Cabalo Decl. at ¶ 2-4. The Court recognizes that Rein is one of the leading and most experienced access lawyers in the San Francisco Bay Area, and he has been regularly awarded an hourly rate of $495. See e.g., Blackwell v. Foley, WL 2794298, at *9-*10 (N.D. Cal. 2010); Overbo v. Lowe Cal. Theater, Inc.'s, 3:07-cv-5368 MHP (N.D. Cal. 2010). Defendants do not argue that counsel's rates are unreasonable. Therefore, the Court finds that the hourly rates are reasonable.

**II. Costs**

Plaintiff requests an award of $8,637 for costs incurred during litigation. In support of his motion for costs, plaintiff submits evidence that the costs incurred are reasonable. Rein Decl. at ¶ 8, Ex. 18; Clefton Decl. at ¶ 8-9, Ex. 28. Defendants' do not specifically challenge

///

///

9

such costs.[4] The Court finds that the costs incurred by plaintiff are reasonable. Therefore, the Court awards $8,637 in costs.

## CONCLUSION

For the foregoing reasons and for good cause shown, **IT IS ORDERED** that plaintiff is awarded attorneys' fees and costs as follows:

1) Attorneys' fees in the amount of $28,431.50:

- Paul Rein: 13.7 hours x $495/hour = $6,781.50
- Celia McGuinness: 50.8 x $395/hour = $20,066.00
- Aaron Clefton: 9.6 hours x $165/hour = $1,584.00

2) Costs in the amount of $8,637.

Dated: January 5, 2011

Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\WHITE V. SHEN\ORD ATTNY FEES.FINAL VERSION.wpd

---

[4] The biggest item of costs is $6,868.00 paid to plaintiff's access consultant and construction expert. His report is exhibit 19 to Rein's declaration. It consists of 61 pages detailing over 80 claimed violations of the access requirements. Ultimately the case was settled for the installation of a bathroom in the upper level of the restaurant and half a dozen other minor measures. It may be that such an elaborate report was necessary in this case and defendant has not specifically objected to it. However, the Court would hope that at the joint site inspection, the parties could agree to such obvious remedial measures as the installation of an accessible bathroom without the need for an elaborate report.